THOMAS B. SULLIVAN,          )
                                 )
          Plaintiff,           )     No. 14 C 6877
                                 )
          v.                   )
                                 )     Judge Edmond E. Chang
T.C. MATHEW et al.,           )
                                 )
          Defendants.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Sullivan was appointed as the Chapter 7 Trustee of Ismail Faris's bankruptcy estate. One of the assets in the estate was a share in the Arlington Heights Promenade Partnership, which Ismail held with his wife, Defendant Sana Faris. On June 17, 2014, the Trustee filed a three-count adversary complaint in the bankruptcy court against the other partners (including Sana Faris) seeking dissolution of the partnership.[1] R. 14-1, Defs.' Exh. A, Compl. Defendant Partners now move to dismiss the Trustee's complaint based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 14, Mot. Dismiss. For the reasons discussed below, Defendants' motion is granted.

## I. Background

On July 16, 2013, Ismail Faris filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. R. 19, Pl.'s Resp. Br. at 1. Sullivan was appointed as the

---

[1] On a motion by Defendants, the Court withdrew the reference to the bankruptcy court. R. 9, Sept. 16, 2014 Minute Entry; *See also* 28 U.S.C. § 157(d).

Trustee of the estate. *Id.* at 1-2. At the time Ismail Faris's petition was filed, he owned an undivided 25 percent interest in the Arlington Heights Promenade Partnership with his wife, Defendant Sana Faris. Compl. ¶¶ 10-11. The remaining individual Defendants are also members of the partnership, which was formed "for the purpose of owning, developing, operating, managing, leasing, selling and otherwise dealing with" a strip mall in Arlington Heights, Illinois. *Id.* ¶¶ 5-13; R. 14-1, Pl.'s Exh. A, Partnership Agreement § 1. The strip mall is held in trust by Defendant Devon Bank, and the partnership is the sole beneficiary of the trust. Compl. ¶¶ 21-22. In his bankruptcy petition, Ismail Faris estimated that his partnership interest was worth approximately $175,000. Compl. ¶¶ 31-32.

The partnership agreement addresses the situation where a partner becomes insolvent or files for bankruptcy. Under the agreement, when a partner is declared bankrupt or insolvent by an order of the court, the partnership does not automatically dissolve or liquidate. Partnership Agreement § 10(A). Instead, "the other Partners shall have the first right to purchase prorata all, but not less than all, of the bankrupt or insolvent Partner's Partnership interest." *Id.* § 10(B). Under the agreement, "[i]f the Partner(s) elect to purchase the bankrupt or insolvent Partner's Partnership interest, they shall serve notice in writing of such election" within three months of the triggering event. *Id.* The agreement also sets forth the method by which the price of the insolvent partner's interest will be calculated. *Id.* § 10(D) (establishing the method by which the partners would arrive at the "fair market value" of the insolvent partner's interest). If the other partners do not elect

to purchase the insolvent partner's interest, the partners must "proceed with reasonable promptness to liquidate and dissolve the Partnership." *Id.* § 10(B).

According to Defendants, Sana Faris elected to purchase her husband's share in the partnership in September 2013, within three months of the bankruptcy petition's filing. R. 14-1, Defs.' Exh. B, Faris Aff. ¶ 4. That letter, attached to Sullivan's response to the motion to dismiss, said that *Ismail* Faris—not Sana—"would be willing to offer the trustee the sum of $25,000.00" for his interest in the partnership. R. 19-1, Pl.'s Exh. 1, Sept. 30, 2013 Letter. Several months later, Sana Faris realized that the letter had inadvertently been sent from her husband, not from her. Faris Aff. ¶ 5. Her lawyer sent a follow-up letter on April 3, 2014, clarifying that the offer of September 30, 2013 had in fact been from her. R. 14-1, Defs.' Exh. C, April 3, 2014 Letter.

Despite these letters, the Trustee alleges that no partner elected to purchase Ismail Faris's partnership interest as required by the partnership agreement. Compl. ¶¶ 43-44. Because he believes that no election was made within three months, the Trustee now seeks to dissolve and liquidate the partnership as described in the agreement. *Id.* ¶ 45; Partnership Agreement § 10(B). Sullivan filed an adversary complaint against the partners, the partnership, and the trustee of the trust that holds the partnership property. The Trustee asserts that he has standing to enforce the partnership agreement because, as the trustee of a partner's estate, he can enforce the debtor's rights under the agreement. Compl. ¶¶ 47-48. The Trustee seeks to dissolve the partnership, wind-up the partnership business,

and inspect the partnership's books and records to ensure that the business is properly wound-up. *Id.* ¶¶ 49-65. Defendants move to dismiss, arguing that Sana Faris elected in writing to purchase her husband's interest. R. 15, Defs.' Br. at 4-8. In the alternative, they argue that the partnership agreement is a rejected executory contract, which the Trustee cannot enforce. *Id.* at 8-10.

## II. Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Federal Rule of Civil Procedure 12(b)(1) provides the procedural vehicle by which the defendant may move a federal court to dismiss a claim or suit on the ground that the court lacks jurisdiction. See Fed.R.Civ.P. 12(b)(1); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). When evaluating a motion to dismiss under Rule 12(b)(1), the court must accept all well-pled allegations as true and draw reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). The court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Id.* (quoting *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam)).

### III. Analysis

### A. Election

Under the partnership agreement, the bankruptcy of a partner does not automatically require the dissolution of the partnership. Partnership Agreement § 10(A). If the partners elect to purchase the interest of the insolvent partner, the partnership can continue to operate. *Id.* § 10(B). Defendants claim that the September 30, 2013 letter to Sullivan operated as an election to purchase Ismail Faris's partnership interest. Under the partnership agreement, when a partner elects to purchase a bankrupt partner's interest, the partners must then calculate

the "fair market value" purchase price. *Id.* §§ 10(B), (D). Because the Trustee has not taken any steps to calculate the purchase price or complete the sale of Ismail's partnership interest, Defendants argue that his complaint must be dismissed as "unripe" under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

Defendants first argue that the claim must be dismissed for lack of jurisdiction under Rule 12(b)(1). The basis of the jurisdictional argument is that, because the Trustee has not completed the process described in § 10(B) of the partnership agreement, his claim for dissolution of the partnership is premature. Defs.' Br. at 4-7; *see also Indiana Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007) ("A case or controversy requires a claim that is ripe."). According to Defendants, Sana Faris made a written election under the agreement, so the Trustee cannot request a dissolution of the partnership until he has attempted (and presumably failed) to consummate the sale. But that is not really a "ripeness" issue. There is a *current* dispute over whether the Trustee has accepted the partnership agreement—and thus can invoke its dissolution provisions at all—or instead has rejected the agreement and cannot invoke dissolution under the agreement. And if the Trustee has accepted the agreement, then there is yet another current dispute, namely, whether Sana Faris made a written election to buy-out the partnership interest of Ismail Faris. This argument is virtually indistinguishable from one form of their argument under Rule 12(b)(6), in which Defendants argue that a partner cannot request dissolution of the partnership when a written election has been made. Defs.' Br. at 7-8. The partner must instead calculate the purchase price and

complete the sale. The argument rests on Defendants' factual contention that Sana Faris elected to purchase Ismail Faris's partnership interest under § 10(B) of the partnership agreement. Although courts must ordinarily consider challenges to jurisdiction before addressing the merits, *see Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013), "if a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted," *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992). Because the 12(b)(1) and 12(b)(6) arguments are essentially identical and both arguments address the merits of the claim, the Court will treat both as motions to dismiss for failure to state a claim under 12(b)(6).

In support of the contention that Sana Faris made a written election under § 10(B) of the agreement, Defendants point to Sana Faris's affidavit and the April 3, 2014 letter. *See* Faris Aff.; Apr. 3, 2014 Letter. But neither of these documents was referenced in or attached to the Trustee's complaint, so the Court cannot consider them in evaluating the motion to dismiss. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2003) ("Generally, matters outside the pleadings may not be considered on [a Rule 12(b)(6)] motion."). Moreover, the Court must take the Trustee's factual allegations as true at this stage in the litigation. *See Iqbal*, 556 U.S. at 679. In the complaint, the Trustee alleges that "[n]one of the non-filing Partners has given notice to the Trustee that he or she (or a group of Partners) elect[s] to purchase the Estate's interest in the Partnership … as required

7

by the Partnership Agreement." Compl. ¶ 44. Because the Court cannot consider matters outside the pleadings and the Trustee has plausibly alleged that no election was made, Defendants' motion to dismiss for failure to state a claim on that specific ground is denied.

Even if the Court were to consider the attached letters and affidavit,[2] the Trustee's claim would not be dismissed on this particular basis. The letter that the Trustee received during the three-month period in which elections could be made is not so clearly an election under the partnership agreement that it renders the Trustee's allegations implausible. The letter, which did not mention the election provision of the partnership agreement, identified the *debtor*—not one of the other partners—as the purchasing party. Sept. 30, 2013 Letter; *see also* Faris Aff. ¶ 5 (acknowledging that the original letter was inadvertently sent on behalf of *Ismail Faris*). And, although the partnership agreement sets out a specific procedure by which the purchase price will be calculated, the letter offered a price substantially below the appraised value of the property. Sept. 30, 2013 Letter (offering a purchase price of $25,000); *see also* R. 14-1, Pl.'s Exh. B, Debtor's Appraisal at 1 (listing the market value of Ismail Faris's partnership interest as $175,000); R. 14-1 Pl.'s Exh. C, Trustee's Appraisal at 2 (listing the market value of Ismail Faris's partnership interest at $210,000). The original letter did not even reference the price-setting procedure in the partnership agreement. The April 2014 letter, which corrected the mistaken name, was not sent until after the three-month period set out in the partnership agreement. Apr. 3, 2014 Letter. Even if the second letter had been sent

---

[2]Neither party objected to considering the attached letters and affidavit.

within the three-month period, it would not make the complaint's allegations implausible. The second letter does not reference the election provision of the agreement, and it just repeats the $25,000 purchase price, which is completely untethered from the price-setting procedures in § 10(D). *Id.* It is therefore more than plausible that the letters were not an election under the partnership agreement. Defendants' motion to dismiss based on Sana Faris's supposed written election is denied.[3]

## B. Executory Contract

But Defendants make an alternative argument, this time arguing that the Trustee in effect rejected the partnership agreement and cannot now invoke its dissolution provision. This argument is premised on the view that the partnership agreement is an executory contract. Defs.' Br. at 8-10. Under § 365 of the Bankruptcy Code, a trustee "may assume or reject any executory contract … of the debtor."[4] 11 U.S.C. § 365. If the trustee assumes the debtor's executory contracts, the "estate takes on the debtor's obligations under the contract" and is entitled to the contract's benefits. *See In re Resource Tech. Corp.*, 254 B.R. 215, 221 (Bankr. N.D. Ill. 2000). If the trustee rejects the contract, it is considered a breach, and the non-debtor party to the contract has a general claim against the estate. *Id.*; 11 U.S.C. § 365(g). Importantly, because rejection is treated as a breach, a trustee who rejects an executory contract can no longer enforce its provisions. *See, e.g., In re*

---

[3]Because the Court concludes that it is plausible that no election was made, it need not consider Sullivan's arguments that a single partner cannot make an election under § 10(B) or that the stay prevents election. *See* Pl.'s Resp. Br. at 8-10.

[4]Subject to certain exceptions not relevant here.

*Warner*, 480 B.R. 641, 650-51 (Bankr. N.D. W. Va. 2012). The trustee's ability to accept or reject an executory contract "reflects the important consideration that the trustee should be able to abandon contracts that impose burdensome liabilities upon the bankruptcy estate, but should also be allowed to retain favorable contracts that benefit the estate." *Matter of Midway Airlines, Inc.*, 6 F.3d 492, 494 (7th Cir. 1993). That is, the estate gets the benefit of good bargains and can repudiate bad ones. This way, § 365 "advances one of the Code's central purposes, the maximization of the value of the bankruptcy estate for the benefit of creditors." *Id.*

The key point here is that, in Chapter 7 proceedings, an executory contract is deemed rejected if the trustee does not accept or reject it within 60 days after the order for relief. 11 U.S.C. § 365(d)(1). The Trustee here did not expressly accept (or reject) the partnership agreement, so if it was an executory contract, then the Trustee is deemed to have rejected it—and he can no longer invokes its terms, including the dissolution provision.

So the question is whether the partnership agreement was executory or not. Although the Bankruptcy Code does not define "executory contract," the term is commonly understood to mean "a contract on which performance remains due to some extent on both sides." *In re Streets & Beard P'ship*, 882 F.2d 233, 235 (7th Cir. 1989) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 58; H. Rep. No. 595, 95th Cong., 1st Sess. 347). Recognizing that "[t]aken literally, this definition would render almost all agreements executory," the Seventh Circuit, like many other Circuit Courts, has adopted Professor Vern Countryman's definition of executory contracts.

*Id.* The Countryman definition turns on the *materiality* of non-performance: an executory contract is an agreement in which "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Id.* (quoting V. Countryman, *Executory Contracts in Bankruptcy*: *Part I*, 57 MINN. L. REV. 439, 460 (1974)). To determine the significance of the remaining obligations, courts must look to relevant state law. *Id.*

In the motion to dismiss, Defendants argue that the partnership agreement is an executory contract. To repeat, the parties do not dispute that Sullivan neither accepted nor rejected the partnership agreement. Defs.' Br. at 8; Pl.'s Resp. Br. at 10. So, if the agreement *is* an executory contract, it has effectively been rejected by Sullivan. 11 U.S.C. § 365(d)(1). Because the rejection constitutes a breach, Sullivan cannot enforce the terms the agreement, including the term requiring dissolution in the absence of a written election to purchase a bankrupt partner's share. *See Warner*, 480 B.R. at 650-51; *In re Newlin*, 370 B.R. 870, 876 (Bankr. M.D. Ga. 2007). If, however, the partnership agreement is *not* executory, it became part of the debtor's estate by operation of § 541 of the Bankruptcy Code. 11 U.S.C. § 541(a) (stating that, subject to some exceptions, all the debtor's "legal or equitable interests" become part of the estate in bankruptcy). If the contract is non-executory, and therefore part of the bankruptcy estate, the trustee can stand in the shoes of the debtor to collect the property of the estate (here, Ismail Faris's share of the liquidated partnership assets). *See* 11 U.S.C. § 701(a)(1); *Koch Refining v. Farmers*

*Union Cent. Exchange, Inc.*, 831 F.3d 1339, 1343 (7th Cir. 1987) (noting that the trustee has "the right to sue parties for recovery of all property available under state law"). The Trustee's right to the relief he seeks in his adversary complaint— dissolution, winding up the partnership with judicial supervision, and an accounting to verify that the partnership business has been wound up—is therefore dependent on whether the partnership agreement is executory or not.

General partnerships often require mutual, continuing obligations from the partners. *See Pielet v. Hiffman*, 948 N.E.2d 87, 94 (Ill. App. Ct. 2011) ("The existence of a fiduciary relationship between all partners is well-established, and each partner is bound to exercise the utmost good faith and honesty in all matters relating to the partnership business."); *Borys v. Rudd*, 566 N.E.2d 310, 314 (Ill. App. Ct. 1990) ("It is established that partners may establish between themselves their rights and obligations in the partnership through a partnership agreement."); *see also* 805 ILCS 206/301(1) ("Each partner is an agent of the partnership for the purpose of its business."). For that reason, courts have typically concluded that partnership agreements are executory contracts for purposes of § 365.[5] *See In re Cutler*, 165 B.R. 275, 279-80 (Bankr. D. Ariz. 1994) ("The courts have generally assumed that partnership agreements are, at least in part, executory contracts."); *In re Catron*, 158 B.R. 629, 634 (E.D. Va. 1993), *aff'd* 25 F.3d 1038 (4th Cir. 1994) (collecting cases); 3-365 COLLIER ON BANKRUPTCY P 365.02(2)(b) ("Partnership

---

[5]There is a practical benefit to the view that partnership agreements are generally executory: if a broad definition of executory contracts applies, then bankruptcy trustees will have an added incentive to be crystal clear to debtors, partners, and creditors about whether the trustee is accepting or rejecting a contract, for fear that silence will be deemed as an in-effect rejection of an executory contract.

agreements generally are executory contracts."); 6 NORTON BANKR. L. & PRAC. 3d § 120:2 ("[A] majority of courts have held that absent some countervailing fact, a partnership agreement is generally going to be an executory contract."). But the Countryman definition does not support *per se* rules that classify certain types of contracts are *categorically* executory or non-executory. *See In re Tsiaoushis*, 383 B.R. 616, 618 (Bankr. E.D. Va. 2007); *In re Ehmann*, 319 B.R. 200, 205 (Bankr. D. Ariz. 2005). Each contract must be examined on its own terms to ascertain if material obligations remain. *In re Smith*, 185 B.R. 285, 293 (Bankr. S.D. Ill. 1995) ("The Seventh Circuit's definition of executory contract requires that a case-specific examination of the [relevant] partnership agreement be made[.]"). The Court must therefore examine the remaining obligations due under the partnership agreement in this specific case to determine if the contract is executory.[6]

At the outset, it is important to understand the nature of Ismail Faris's partnership interest. These interests are two-fold. *See* 805 ILCS 206/101(i) (describing "[p]artnership interest" as both a "partner's transferable interest" and "management and other rights"); *Cutler*, 165 B.R. at 280 (reasoning that "the partnership relationship [should] be viewed as an amalgam" of a property interest and an executory management interest); *In re Newlin*, 370 B.R. 870, 874-76 (Bankr. D. Ga. 2007) (adopting the *Cutler* formulation). On one hand, Faris had a *property*

---

[6]The Court may consider the contents of the partnership agreement in evaluating the motion to dismiss because it was attached to the complaint. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("Because [a document] was attached to the complaint, it became a part of it for all purposes, and so the judge could consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment.") (internal citations omitted).

interest in the partnership profits and surplus. *See* 805 ILCS 206/502 ("The only transferable interest of a partner in the partnership is the partner's share of the profits and losses of the partnership and the partner's right to receive distributions. The interest is personal property."). This interest survives even if the partnership agreement is terminated, and, as personal property of the debtor, becomes part of the bankruptcy estate under § 541. *See Cutler*, 165 B.R. at 280; *Newlin*, 370 B.R. at 876; *see also Turner v. Cent. Nat'l Bank of Mattoon*, 468 F.2d 590, 591 (7th Cir. 1972) (per curiam) ("The only interest that the trustee of an individual partner has in partnership property is the right to demand and receive the individual partner's interest, if any, in the partnership assets *after* an accounting and payment of partnership debts out of the property belonging to the partnership."). On the other hand, Faris had a right to participate in the governance of the partnership property. *Cutler*, 165 B.R. at 280; *Newlin*, 370 B.R. at 874-76; *see also* 805 ILCS 206/503 (stating that a transfer of a partner's interest "does not, as against the other partners or the partnership, entitle the transferee, during the continuance of the partnership, to participate in the management or conduct of the partnership business[.]"). These management rights, which are governed by the partnership agreement or state partnership law, often require performance from all partners. So, if the remaining management obligations under the Arlington Heights Promenade partnership agreement were "significant[ly] unperformed" at the time the bankruptcy petition was filed, *Streets & Beard*, 882 F.2d at 235, then the partnership agreement is an executory contract.

The partnership agreement sets out several obligations of the partners. For one, partners are required to contribute additional capital to the partnership if necessary. Partnership Agreement § 4 ("If at any time the Partners determine that additional capital is required to be contributed to the Partnership, each Partner *shall* contribute to the Partnership a proportionate share of the additional capital.") (emphasis added). The agreement says that the day-to-day affairs of the partnership are managed by Mathew George and Issac Plamoottil,[7] but "[a]ll other decisions or actions regarding the Partnership shall require the written consent of parties having a majority in interest." *Id.* § 7. That is, all of the partners vote to manage the affairs of the partnership that are not day-to-day management duties. The agreement lists out "prohibited acts" by the partners, like borrowing money on behalf of the partnership without approval, and it sets out requirements for selling or assigning a partnership interest. *Id.* §§ 8-9. The partners also owe general fiduciary duties to one another under the Illinois Uniform Partnership Act. 805 ILCS 206/404; *see also* 805 ILCS 206/103(b)(3) (stating that fiduciary duties cannot be waived by agreement). The partnership agreement does not set out any specific date for termination of the partnership, but it provides several scenarios that would trigger termination. Partnership Agreement § 10. The termination provisions also set out responsibilities of the partners in dissolving and winding up the partnership business. *Id.*

---

[7]The April 3, 2014 letter suggests that the day-to-day management duties may have been assigned to Ismail Faris at some point, but it is not clear when or if this actually happened. *See* Apr. 3, 2014 Letter. In any event, the Court cannot consider the letter in evaluating the motion to dismiss. *See Albany Bank & Trust*, 310 F.3d at 971.

Although failure to perform some of these duties individually might not result in a material breach of the partnership agreement, there remain significant, ongoing obligations for the partners. They must continue to vote on management affairs that are not day-to-day. They must contribute capital when it is required. They continue to owe one another and the partnership fiduciary duties. They are required to take certain steps to terminate the partnership and manage the partnership property when triggering events occur.

Taken together, the failure of a partner to perform these obligations would result in a material breach. To determine if there is a material breach in Illinois, "a court must ask whether the matter, in respect to which failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it." *Haisma v. Edgar*, 578 N.E.2d 163, 168 (Ill. App. Ct. 1991) (internal quotation marks and citation omitted); *see also Virendra S. Bisla, M.D., Ltd. v. Parvaiz*, 884 N.E.2d 790, 795 (Ill. App. Ct. 2008) (determining if a breach was material based in part on "whether the breach worked to defeat the bargained-for objective of the parties"). The partnership agreement was formed for the purpose of owning, operating, and maintaining the partnership property. *See* Partnership Agreement § 1. The partners clearly contemplated the ongoing contribution and participation of the partners in achieving this purpose. If a partner failed to contribute, vote, act as a fiduciary, or comply with the provisions setting out the governance of the partnership and its property, there is no question that this purpose would be frustrated. Because a failure to perform the obligations set forth

in the partnership agreement would constitute a material breach, the partnership agreement—at least with respect to management of the partnership and governance of partnership property—is an executory contract. *Accord Newlin*, 370 B.R. at 875; *In re Siegal*, 190 B.R. 639, 643 (Bankr. D. Ariz. 1996); *Cutler*, 165 B.R. at 280; *In re Heafitz*, 85 B.R. 274, 284 (Bankr. S.D.N.Y. 1988); *In re Priestley*, 93 B.R. 253, 258-59 (Bankr. D.N.M. 1988); *In re Sunset Developers*, 69 B.R. 710, 712-13 (Bankr. D. Idaho 1987); *but see Smith*, 185 B.R. at 293-94 (holding that a *limited* partner was "merely as passive contributor of capital," and her obligations under the limited partnership agreement were non-executory) (internal quotation marks and alterations omitted).

In his response, the Trustee argues that the partnership agreement is a formation-and-governance instrument, like a limited liability company agreement, and is therefore non-executory. Pl.'s Resp. Br. at 11. Some courts, looking at the specific provisions of the operating agreements before them, have found that LLC operating agreements are not executory contracts. *See, e.g. In re Denman*, 513 B.R. 720, 726 (Bankr. W.D. Tenn. 2014); *In re Capital Acquisitions & Mgmt. Corp.*, 341 B.R. 632 (Bankr. N.D. Ill. 2006); *Ehmann*, 319 B.R. at 205. The Trustee relies on *In re Denman*, a case in which the bankruptcy court found that an LLC operating agreement was not executory. 513 B.R. 720. In *Denman*, the court was evaluating a similar contractual provision to the one at issue in this case: any member of the LLC had the option to purchase another member's interest if that member filed for bankruptcy. *Id.* at 722. Using the Countryman definition, the court determined that

the LLC agreement was not executory for several reasons. First, "a material breach or default of an executory obligation in a Tennessee LLC operating agreement does not excuse the other parties from making their contributions." *Id.* at 724. A failure to contribute capital ordinarily "causes the non-contributing member to have his or her membership interest reduced, eliminated, subordinated, or sold." *Id.* The Court also held that Tennessee LLC operating agreements were meaningfully unlike contracts. *Id.* at 725. Under Tennessee LLC law, these agreements could lack "mutual assent, consideration, and privity amongst the parties," and they could be formed by a single person. *Id.* ("It may be said that such provisions are an anathema to executory contracts."). The court ultimately concluded that "Tennessee LLC operating agreements are not per se executory contracts … because of their unique elements and features under state law that are inconsistent with contract law." *Id.* This conclusion makes clear that the *Denman* decision is tethered to the particular qualities of Tennessee LLC agreements. General partnerships, by contrast, do not have all of these qualities. For example, under Illinois law, a partnership *must* be two or more people, *see* 805 ILCS 206/202, and partnership agreements typically have the classic hallmarks of contract, *see Fisher v. Parks*, 618 N.E.2d 1202, 1208 (Ill. App. Ct. 1993) ("Because a partnership is a contractual relationship, the principles of contract law fully apply to it.").

In an attempt to bolster the analogy between LLCs and general partnerships, the Trustee argues that both "partners and [LLC] members owe future obligations to the entity and not generally to the other parties, and any breach by one partner

does not relieve the other partners of their obligations." Pl.'s Resp. Br. at 11. In support of this argument, he cites to a comment to the Uniform Partnership Act which says that "the partnership itself may maintain action against a partner for any breach of the partnership agreement or violation of any duty owed to the partnership." *Id.* This is true, but (as Defendants point out), it remains true that *partners* can bring breach actions against other partners for violations of the agreement. *See* 805 ILCS 206/405; *see also* 805 ILCS 206/404 (stating that a partner owes fiduciary duties to both the partnership and other partners). By contrast, LLC members must ordinarily sue other members *derivatively* through the LLC. *See* 805 ILCS 180/40-1; *see also Freed v. JPMorgan Chase Bank, N.A.*, 2012 WL 3307091, at *5 (N.D. Ill. Aug. 13, 2012) ("[I]t is invariably true that what harms a corporation (or an LLC) harms its shareholders by decreasing the value of their interest in the firm. That does not change the fact that a direct action is unavailable where the harm is a general one inflicted upon the company, rather than directly on a specific stockholder or officer."). Moreover, unlike partners, members of an LLC do not necessarily owe fiduciary duties to one another (or even to the LLC itself). *See* 805 ILCS 180/15-3 (stating that members of a manager-managed LLC who are not also managers "owe[ ] no duties to the company or to the other members solely by reason of being a member"). Because *Denman* focused on the unique qualities of LLCs that are not applicable to partnerships, its reasoning is unpersuasive in this case.

The Trustee next argues that, despite the various obligations described in the partnership agreement, Ismail Faris owed no substantial *future* obligations to the

partnership or the partners at the time his petition was filed. Pl.'s Resp. Br. at 13-14. In support of this argument, the Trustee cites to *In re Capital Acquisitions & Management Corp.*, which held that remote or conditional duties or obligations do not make a contract executory. 341 B.R. at 635-36. In *Capital Acquisitions*, the court evaluated an LLC agreement. The only remaining obligations under the agreement were conditional or triggered by some future event. *Id.* at 636 For example, the members had to indemnify the LLC from any liability or loss from a tax attributable to that member's profits. *Id.* The court determined that the party claiming the contract was executory "ha[d] not identified any present obligations on [the debtor's] part to take an action in the future which, if left unperformed, would constitute a material breach." *Id.* Although *Capital Acquisitions* highlights the difficulties inherent in applying executory contract principles to ongoing operation agreements, it does not change the conclusion that the partnership agreement here is executory. In *Capital Acquisitions*, the operating agreement only provided that "*if* circumstances change, [the LLC member] *may* have certain future obligations." *Id.* (emphasis in original); *see also In re Strata Title, LLC*, 2013 WL 1773619, at *2 (Bankr. D. Ariz. Apr. 25, 2013) (distinguishing *Capital Acquisitions* and holding that the LLC member's voting rights, particularly those relating to selling the LLC's property, were not contingent or remote when the manager was actively marketing the LLC's property). Here, however, the management and fiduciary obligations were not triggered by some future event; they were ongoing. The *purpose* of the partnership is to own, operate, and manage the partnership property.

It cannot be said that the obligations related to this purpose are contingent on some future event. Unlike the remote possibility that the member of an LLC will cause the LLC to incur a tax burden, the obligations remaining under the partnership agreement are present obligations, which, if left unperformed, would result in a material breach.

Having concluded that Faris's management interest in the partnership is executory, the question is whether the Trustee is attempting to enforce that management right (which he cannot do because he did not assume the partnership agreement) or if he is trying to exercise a property right (which he is permitted to do under § 541). In his complaint, the Trustee asks for three forms of relief: dissolution of the partnership under § 10(B); permission to wind up the partnership with judicial supervision; and an accounting to ensure that the partnership was dissolved and properly wound up. *See* Compl. ¶¶ 49-65. Compelling the dissolution and winding up of the partnership clearly involves management of the partnership and its assets. *See Cutler*, 165 B.R. at 280-81 ("A right of this nature usually lies uniquely with a partner and not with an outsider."). Because the Trustee is plainly seeking to enforce the terms partnership agreement that he has rejected, the Court cannot award him the relief he seeks. His complaint must therefore be dismissed.

Although the Trustee cannot enforce the terms of the executory partnership agreement, the estate still holds Faris's property interest in the partnership. *See* 11 U.S.C. § 541(a); 805 ILCS 206/502; *see also Cutler*, 165 B.R. at 280; *Newlin*, 370 B.R. at 876. Because the property interest is part of the bankruptcy estate, the

Trustee can do what is necessary to "collect [it] and reduce [it] to money." 11 U.S.C. § 704(a)(1). Illinois partnership law provides one mechanism by which he can do so. Under the Illinois Uniform Partnership Act, the bankruptcy of a partner will result in that partner's dissociation from the partnership. 805 ILCS 206/601(6)(i). This dissociation will not necessarily result in the partnership's dissolution. *See* 805 ILCS 206/801. If a partner is dissociated due to bankruptcy, the partnership must purchase his interest for a specified buy-out price. 805 ILCS 206/701(a). If the partnership does not pay, the disassociated debtor (or a trustee standing in his shoes) can sue the partnership to set and recover the buy-out price. 805 ILCS 206/701(i).

The Trustee argues that the provisions of the Partnership Act that dissociate the debtor due to his bankruptcy are unenforceable *ipso facto* laws. The Bankruptcy Code invalidates laws and agreements—often called *ipso facto* provisions—that operate to reduce or modify the debtor's interest in property because of that debtor's bankruptcy. Under § 541, those types of laws are overridden by the Bankruptcy Code:

> an interest of the debtor in property becomes property of the estate … notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law … that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1). Because the Illinois Uniform Partnership Act would dissociate the debtor from the partnership as a result of his bankruptcy petition, the Trustee

believes that it cannot be enforced. *See* Pl.'s Resp. Br. at 15 (citing *In re LaHood*, 437 B.R. 330, 336 (C.D. Ill. 2010)). If the dissociation provision cannot be enforced, the Trustee argues, then he "may enforce the Agreement as a full partner in the Partnership." *Id.*

The Trustee is only half-right. It is certainly possible that the dissociation provision would operate to modify Ismail Faris's property rights. *See LaHood*, 437 B.R. at 336. If the debtor was not dissociated by operation of law, the estate's property interest in the partnership would include the right to receive profits and surpluses. *See* 805 ILCS 206/502; *Turner*, 468 F.2d at 591. The Trustee could retain that right, and continue to receive profits from the partnership activities, or he could sell the partnership interest (including the future share of profits) for the benefit of the estate and its creditors. If the debtor is automatically dissociated, those options are foreclosed to him. Dissociation would not make the partnership interest worthless, but it could operate to change the rights of the debtor, a result prohibited by § 541(c)(1).

But the Court does not need to decide whether the provisions of the Partnership Act that dissociate a debtor in bankruptcy are *ipso facto* laws because that decision will have no bearing on the availability of the relief that the Trustee seeks in his complaint. The Trustee reasons that, if Faris was not dissociated by operation of law, then the Trustee can enforce the agreement as a full partner. *See* Pl.'s Resp. Br. at 15 (citing *LaHood*, 437 B.R. at 336). But this argument does not account for the executory nature of the management obligations. As discussed

above, Faris's property interest in the partnership became part of the bankruptcy estate under § 541, and that interest cannot be modified as a result of his bankruptcy. 11 U.S.C. § 541(c)(1). But Faris's management rights and obligations under the partnership agreement were executory when he filed his petition. By failing to assume the partnership agreement, Sullivan rejected the contract and cannot now enforce it.[8] 11 U.S.C. § 365(d). The relief he seeks in his complaint— dissolution pursuant to the partnership agreement, judicial supervision of winding up, and an accounting to ensure that the partnership was properly dissolved and wound-up—are based on the management rights included in the agreement that he rejected.[9] Even if the dissociation provisions cannot be enforced against the *property* rights of the estate, the Trustee cannot enforce the *management* rights that he rejected. Because the Court cannot give the Trustee the relief that he seeks, the motion to dismiss is granted.

---

[8]If Sullivan had *assumed* the partnership agreement, it would likely be necessary to evaluate the effect of the portions of the partnership agreement or provisions of the Partnership Act that affected the debtor's management rights based on his bankruptcy. *See* 11 U.S.C. § 365(e)(1).

[9]*LaHood* does not compel a different conclusion. In that case, the court did not evaluate whether the LLC agreement was executory, and it relied on cases that found LLC agreements to be non-executory. 437 B.R. at 335-36 (citing, among others, *Ehmann*, 319 B.R. at 206). The court therefore had no occasion to distinguish those rights governed by § 541 and those governed by § 365.

## IV. Conclusion

For the reasons discussed above, Defendants' motion to dismiss the Trustee's adversary complaint for failure to state a claim is granted.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2015